Claude ROSS, Trudy Tennant, Mabel Searles, Linda Fleming, Walt Hallinan, Brigette Reeves, Sandra Brown, Charles Trulear, Barbara Turner, A. Ollie Wyatt, Cynthia Jones, Douglas Garrett, Josephine McElveen, Sigmond Porter, Jacqueline Watkins, Jerome Bell, Loretta Brown, Ronald Dorsey, Ruben Jones, Alice Martin, Betty Morris, Larry Nottage, Carl Sumner, Neil Raimo, Rudolph Sawyer, James Warner and Dennis Willis

v.

Elton JOLLY, Grace Whitney and Philadelphia Housing Authority.

Civ. A. No. 92–6106.

United States District Court, E.D. Pennsylvania.

Oct. 22, 1993.

Robert J. Sugarman, Sugarman & Associates, Philadelphia, PA, for plaintiffs.

James G. Sheehan, Asst. U.S. Atty. Civ. Div., David F. McComb, Asst. U.S. Atty's Office, Philadelphia, PA, for U.S., and Michael Smerconish.

Carl Oxholm, III, Hangley, Connolly, Epstein, Chicco, Foxman and Ewing, Philadelphia, PA, for Elton Jolly, Grace Whitney, and Philadelphia Housing Authority.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil, equity action is once again before this Court pursuant to the motion of Defendants, Elton Jolly, Grace Whitney and the Philadelphia Housing Authority for summary judgment and for Rule 11 sanctions and the Plaintiffs' motion for leave to amend and for discovery. For the reasons which follow, the summary judgment motion is granted and the motions for sanctions and for leave to amend are denied.

### I. HISTORY OF THE CASE.

According to the pleadings and the record in this matter, this case has its origins in late

1991 when two separate audits conducted by the Advisory Committee to the Greater Philadelphia Chamber of Commerce and the Office of the Inspector General for HUD's regional office revealed that the Philadelphia Housing Authority was in breach of its obligations and duties under the Annual Contributions Contract which it had with the United States Department of Housing and Urban Development (HUD) and through which much of its funding was received. As a consequence of these findings, on May 20, 1992, PHA and HUD entered into an Agreement of Understanding under which PHA gave to HUD "... all power and authority to act as and for it ..." for a period of time not to exceed one year. The Agreement of Understanding further provided that HUD would appoint a Special Master to "manage and operate the housing authority in a manner consistent with HUD regulations and all federal, state and local laws." On June 22, 1992, Michael Smerconish, HUD's regional administrator, appointed Elton Jolly to the special master position.

Shortly thereafter, on August 5, 1992, Messrs. Jolly and Smerconish announced that a reorganization plan had been developed for PHA, the cornerstone of which was the creation and implementation of a merit hiring system for all PHA employees. On or about October 8, 1992, each of the plaintiffs, who had for varying lengths of time been employed by PHA as housing managers, received correspondence from Mr. Jolly informing them that, as of October 22, 1992, their housing manager positions were being abolished under the reorganization plan and that they were effectively terminated from those positions as of that date. In place of the housing manager position, PHA was creating the position of "Site Manager," which had all of the same responsibilities as did the "Housing Managers" as well as the obligation to oversee the maintenance function and to conduct regular inventories. The plaintiffs were each informed that they would automatically be appointed to the positions of Acting Site Managers for their respective housing projects and that they could apply for the permanent position of Site Manager or for any other new position at PHA by respond-

ing directly to Anthony Hughes, the new Director of Human Resources.

In response thereto, on October 22, 1992, the plaintiffs commenced this lawsuit to, *inter alia*, enjoin PHA, its Special Master, Elton Jolly and its Associate Special Master, Grace Whitney from terminating them from their employment. In their amended complaint, the plaintiffs charged that the defendants, acting in concert with Michael Smerconish, had violated the Federal Labor Management Relations Act, 5 U.S.C. § 7101, *et seq.*, the Federal Civil Service Reform Act, 5 U.S.C. § 1101, *et seq.* and the First and Fourteenth Amendments to the U.S. Constitution, had breached their employment agreements and had failed to recognize the rights of the plaintiffs to the protections afforded by the Merit Systems Protection Board as provided for at 5 U.S.C. § 1201, *et seq.* In addition, the plaintiffs essentially alleged throughout their pleadings and motions before this court that PHA's plan of reorganization was a mere pretext to cover up an alleged scheme by the defendants to justify political firings of those PHA employees (plaintiffs included) who are not in any way affiliated with the so-called "Rizzo-crat or Rizzo–Republican" political group.

Following a full day of hearings in this matter on December 21, 1992 on the plaintiffs' motion for injunctive relief and consideration of additional evidence and memorandum by the parties, this Court issued a decision on January 21, 1993 denying the plaintiffs' motion because the plaintiffs had failed to prove any of the elements necessary to justify the grant of extraordinary injunctive relief. We likewise could find no evidence that politics had played any role in PHA's decision to terminate the plaintiffs from their housing manager positions and to appoint them to their acting site manager roles.

On December 17, 1992, Elton Jolly, Grace Whitney and the Philadelphia Housing Authority moved for the imposition of sanctions against the plaintiffs pursuant to Fed. R.Civ.P. 11 and on January 15, 1993 filed this motion for summary judgment. The plaintiffs, in turn, appealed the January 21, 1993 decision denying them injunctive relief to the Court of Appeals for the Third Circuit and,

on June 28, 1993 filed a motion for leave to amend and for discovery. On September 30, 1993, the Third Circuit affirmed the January 21, 1993 ruling without opinion and we therefore now turn to the three motions still pending before this court.

## II. *DISCUSSION*

### A. *Standards Applicable to Motions for Leave to Amend*

 Federal Rule of Civil Procedure 15(a) sets forth the general principles governing amendment of pleadings. Specifically, that Rule states:

> **(a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Similarly, under Fed.R.Civ.P. 15(b), "such amendment of the pleadings as may be necessary to cause them to conform to the evidence ... may be made upon motion of any party at any time ..." The decision whether to grant leave to amend rests within the sound discretion of the trial court, although the court's discretion is circumscribed by the liberal amendment philosophy behind the rule. *Snyder v. Baumecker,* 708 F.Supp. 1451, 1456 (D.N.J.1989); *Cahill v. Carroll,* 695 F.Supp. 836, 837 (E.D.Pa.1988). Factors the trial court may consider in deciding a motion to amend include undue delay, undue prejudice to the opposing party and futility of amendment. *Averbach v. Rival Manufacturing Co.,* 879 F.2d 1196, 1203 (3rd Cir. 1989), citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

For example, if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial. Likewise, if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend. *6 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1487.*

 In this case, the plaintiffs filed the instant motion to amend some eight months after the filing of their first amended complaint requesting leave to add a claim under 42 U.S.C. § 1983 alleging that their terminations were also motivated by racial discrimination. It further appears from the plaintiffs' motion, that the basis for their request to amend and for additional discovery stems from the contents of several newspaper articles published in June, 1993 in which several PHA Board members alleged that race was a significant factor in several personnel decisions made by the housing agency during the period in which it was being run by HUD.

Applying the factors enunciated above, this court first finds that an inordinate period of time has elapsed since the plaintiffs first filed this action in October, 1992 and that during that time evidence has been presented, numerous depositions have been taken and several appeals have been presented to the Third Circuit. Moreover, we are unable to locate nor have the plaintiffs provided us with any legal authority or precedent such as would support the admission into evidence at trial of the newspaper articles upon which plaintiffs evidently rely in support of their motion to amend. Finally, the plaintiffs have not offered this court any explanation as to why they could not have discovered that their alleged terminations were also racially-motivated prior to June of this year. For these reasons, we believe that the proposed amendment is both untimely and would be futile. Plaintiffs' request for leave to amend is therefore denied.

B. *Standards Governing Motions for Summary Judgment*

■ Federal Rule of Civil Procedure 56 outlines the principles to be applied by the district courts in disposing of motions for summary judgment. Under subsection (c) of that rule:

> ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

In this manner, a summary judgment motion requires the court to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988).

■ Generally speaking, the party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motions and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering such a motion, the court must view all of the facts in the light most favorable to and all reasonable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991).

This does not, however, give the non-movant license to rest solely upon the allegations contained in his or her pleadings in defense of a summary judgment motion. Indeed, Fed.R.Civ.P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, while the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element of its case. *Celotex, supra,* 477 U.S. at 323–25, 106 S.Ct. at 2553; *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524 (3rd Cir.1990).

■ Viewing the instant case in the light most favorable to the plaintiffs as non-movants, we note that in September, 1993, plaintiffs' counsel filed a "Suggestion of Mootness" with attachments in the Court of Appeals which clearly demonstrates that on September 15, 1993, PHA notified each of the plaintiffs that they had been formally appointed to the new "Site Manager" positions, effective September 10, 1993. By plaintiffs' own admission, they "believe these letters moot the issues involved in the within appeal, in that they remove all foreseeable possibility of danger to position of the plaintiffs from the prior action of the appellees." In light of this development, we find it impossible to reach any other conclusion but that these plaintiffs no longer have any of the claims which they raised in their amended complaint and that summary judgment must be entered in favor of the defendants on the basis of mootness.

C. *Standards Applicable to Motions for Sanctions*

Under Fed.R.Civ.P. 11,

> "[e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certificate by the signer that the

signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... *If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.*

(emphasis supplied)

■ It is well-recognized that the central purpose of Rule 11 is to discourage the filing of pleadings, motions and other papers that are frivolous, legally unreasonable or without factual foundation. *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3rd Cir.1988) quoting *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986) and *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986). Rule 11, however, does not prohibit merely intentional misconduct. Inexperience, incompetence, willfulness or deliberate choice may all contribute to a violation. *Bakker v. Grutman,* 942 F.2d 236, 240 (4th Cir.1991). The goal of Rule 11, therefore is not wholesale fee shifting but correction of litigation abuse. *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3rd Cir.1987).

■ Although Rule 11 has not been consistently applied throughout the Nation, certain aspects of Rule 11 jurisprudence are clear. First, the Rule imposes an obligation upon counsel to stop, think, investigate and research before filing papers either to initiate a suit or to conduct the litigation. *Project 74 Allentown, Inc. v. Frost,* 143 F.R.D. 77, 82 (E.D.Pa.1992), *aff'd w/out opinion,* 998 F.2d 1004 (3rd Cir.1993). Second, Rule 11 can

only be violated if the signing of the document in question was unreasonable under the circumstances. Although a court must avoid the use of hindsight to determine whether signing a document was reasonable under the circumstances, it is the objective reasonableness of the signing which must be evaluated, not the subjective intent or belief of the signer. *Id.,* citing, *inter alia, Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 289 (3rd Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). Finally, if a court finds that Rule 11 has been violated, the imposition of sanctions is mandatory. *Id.,* 143 F.R.D. at 83.

■ In this case, the defendants moved for Rule 11 sanctions against the plaintiff Claude Ross for the signing of his affidavit in support of the plaintiffs' motion for preliminary injunction on the grounds that that affidavit had no basis in fact or law. Two days of hearings were held in this matter on February 18 and March 9, 1993 at which both Mr. Ross and plaintiffs' counsel, Mr. Sugarman, testified as to what their beliefs were and what actions they took prior to the October, 1992 filing of the preliminary injunction motion. Although it appears that very little investigation was undertaken at that time into who the alleged "Rizzocrats" were or the purported political nexus between that so-called group and Messrs. Jolly and Smerconish and Ms. Whitney, we cannot say that this inaction rose to the level of having been unreasonable under the circumstances. Indeed, regardless of the eventual outcome of this case, the fears of Mr. Ross and the other plaintiffs were certainly real, albeit ultimately unjustified. What's more, we note that in its order affirming this Court's January 21, 1993 decision, the Third Circuit denied defendants' application for an award of attorney's fees. Accordingly and for all of the foregoing reasons, we decline to impose sanctions against Mr. Ross under Rule 11. The defendants' motion for same is therefore denied.

An appropriate order follows.

## ORDER

AND NOW, this 22nd day of October, 1993, upon consideration of the Motion of

Plaintiffs for Leave to Amend and For Discovery, and the Motions of the Defendants for Summary Judgment and For Sanctions Pursuant to Fed.R.Civ.P. 11, it is hereby ORDERED that: (1) the Plaintiffs' Motion for Leave to Amend and Discovery is DENIED; (2) the Defendants' Motion for Sanctions is DENIED; and (3) the Defendants' Motion for Summary Judgment is GRANTED and judgment in no amount is hereby entered in favor of the Defendants and against the Plaintiffs.