UNITED STATES of America,

v.

UNION CORP.; Metal Bank of America; Irvin G. Schorsch, Jr.; and John B. Schorsch,

v.

Consolidated Edison Co. of New York; Public Service Electric & Gas Co. of New Jersey; and Monsanto Co.

No. CIV.A.80–1589.

United States District Court, E.D. Pennsylvania.

June 13, 2000.

---

John N. Joseph, Assistant U.S. Attorney, Philadelphia, PA, David H. Topol, Walker B. Smith, Cecilia E. Kim, Lee R. Tyner, Micheal Martin, John W. Sither Eric G. Williams, Steven E. Rusak, U.S. Dept. of Justice Environmental Enforcement Section, Environmental & Natural Resources, Washington, DC, James G. Sheehan U.S. Attorney's Office Philadelphia, PA, Elizabeth B. Lukens, U.S. Environmental Protection Agency, Region III, Philadelphia, PA, for the United States.

Kenneth S. Cooper City of Philadelpohia, Law Dept. Philadelphia, PA, Daniel W. Cantu-Hertzler, City of Philadelphia Law Department, Chief Deputy City Solicitor, Philadelphia, PA, for City of Philadelphia.

John Mattioni, Robert W. Weidner, Mattioni, Mattioni & Mattioni, LTD., Philadelphia, PA, for Union Corporation, Metal Bank of America, Irvin G. Schorsch, Jr. and John B. Schorsch.

Jeffrey N. Martin, Hunton and Williams Washington, DC, Dan J. Jordanger, Hunton & Williams Richmond, VA, for Baltimore Gas and Electric, Jersey Central Power & Light, Long Island Lighting Co., Metropolitan Edison Comapny, Orange and Rockland Utilites, Peco Energy Company, Potomac Electric Power Co., PP & L Electric Utilities Corp., and Virginia Power Co.

Jeffrey Martin, Hunton and Williams, Washington DC, Edward J. Cullen, Jr., Philadelphia, PA, for Cottman Avenue PRP Group.

Robert Toland, II, Kathy A. O'Neill, Micheal H. Malin, White and Williams, Philadelphia, PA, Arthur Makadon, Leslie E. John, Ballard, Spahr, Andrews and Ingersoll, Christopher R. Graham, for Public Service Electric and Gas Co., of New Jersey.

### *MEMORANDUM*

GILES, Chief Judge.

The question at hand is whether Defendants' Amended and Restated Counterclaim for Reformation, filed without leave of court and after dismissal with prejudice of the original reformation counterclaim, now properly is, or should be, before this court. The answer requires consideration of the effect of dismissal on a party's right to amend a pleading as a matter of course under Fed. R.Civ.P. 15(a), an unresolved issue in the third circuit, and of when a district court should, in its discretion, grant a party leave to amend and to replead a claim. For the reasons that follow, this court concludes that the Amended and Restated Counterclaim is not, and should not be, before it and therefore is stricken. To the extent Defendants now seek leave of court to replead the reformation counterclaim, such leave is denied.

### Procedural Background

This is an environmental clean-up and cost-recovery action that, as the case caption indicates, has been on this court's docket for a generation. In 1980, the United States brought suit against the defendants (collectively "Union Corp."), seeking an order for the clean-up of environmental hazards at a site located on Cottman Avenue, Philadelphia, Pennsylvania. The original complaint asserted claims under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*, the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, *et seq.*, and the Refuse Act, 33 U.S.C. § 407. Union Corp. answered the complaint and also filed third-party claims against various corporate entities, seeking, *inter alia*, indemnification and contribution. The parties litigated, took extensive discovery, and sought

settlement of the matter over the next three years.

In 1983, the parties entered into a Stipulation, pursuant to which Union Corp. was to clean up certain oil and PCB contamination at the Cottman Avenue site and this action was placed in administrative suspense, pending completion of the required remediation. The Stipulation resulted after the parties rejected the option of entering a comprehensive judicial Consent Decree which explicitly would have encompassed and finalized all the rights and responsibilities of all the parties to the litigation. On the other hand, the Stipulation made no provision for release of claims as to any defendants and made no provision for the dismissal of the action upon performance. It provided only that the Stipulation would terminate upon completion of the required remedial measures. The Stipulation was approved by this court and filed on December 12, 1983.

In 1989, upon initial certification by the Environmental Protection Agency ("EPA") that Union Corp. had completed the remediation steps required by the Stipulation, Union Corp. filed with this court a certification that performance under the Stipulation was complete and moved to enforce the settlement and to dismiss this action as settled, pursuant to the Stipulation. The United States opposed that motion, arguing that the Stipulation was not a settlement of the action because it did not provide for a release or for dismissal of the action. The government also requested a continued stay of this action pending a determination by the EPA of whether further remediation on the Cottman Avenue site was necessary. This court granted the stay, but deferred resolution of the question of whether the Stipulation settled this action.

In April 1998, this court ordered all parties to show cause why the case should not be removed from administrative suspense and returned to the trial docket. In May 1998, the parties appeared at a status conference to address this issue. By this time, the EPA had determined that Union Corp.'s efforts to eliminate soil and groundwater contamination had not been effective and that pollutants remained. The government alleged that Un-

ion Corp., as the property owner, was responsible for the continued contamination. Thereupon, the United States moved to amend its complaint, seeking to add a claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, to amend and restate its RCRA claim, and to drop the remaining claims.

Union Corp. opposed the motion, arguing again that such an amendment would be futile, since the 1983 Stipulation was a settlement agreement and release such that, once the required remediation steps were completed, dismissal of the action with prejudice was required. It also argued that the government was barred by principles of *res judicata* from bringing new claims against it arising from environmental contamination at the same property. Union Corp. further offered, *inter alia,* that various statements by both parties during the course of negotiating the 1983 Stipulation and after, by this court, and by the EPA all showed that the parties intended that the Stipulation would be a complete settlement of this action and that this action would be dismissed upon Union Corp.'s performance of the remediation work.

By Order dated August 24, 1998, this court granted the motion to amend and gave the United States leave to file the amended complaint. Although this court did not explain its decision to exercise its discretion and grant leave, that decision necessarily was an implicit finding that the 1983 Stipulation did not settle this matter and was not a bar to amendment of the complaint. Further, the EPA had determined that the remediation steps undertaken by Union Corp. had not been effective in eliminating soil and groundwater contamination, that significant levels of pollutants remained on and in the Cottman Avenue site, and that Union Corp., as the owner, was lawfully responsible. EPA's determination that the remediation efforts were not effective meant that the Stipulation was not fully performed in any event so as to permit this court to relieve Union Corp. of responsibility for continued contamination remediation.

In September 1998, Union Corp. moved to dismiss the Amended Complaint, raising the

same arguments as to the effect of the 1983 Stipulation and incorporating by reference all the arguments on that point previously made in Union Corp.'s motion to enforce the settlement and in opposition to the motion of the United States to amend the complaint. For the third time, Union Corp. focused on the various statements by all parties and actors referring to the Stipulation as a "settlement," arguing that these statements showed the true intent and understanding was that the 1983 Stipulation would fully settle the action and that the United States had admitted as much. By Order dated November 2, 1998, this court denied the motion to dismiss, again rejecting Union Corp.'s argument as to the meaning of the Stipulation, again for the same reasons.

In January 1999, Union Corp. filed its Answer to Plaintiff's Amended Complaint with Counterclaims. The three counterclaims: a) sought judicial reformation of the 1983 Stipulation into a full settlement and release of this action; b) alleged violations of Union Corp.'s substantive and procedural Due Process rights under the Fifth Amendment to the United States Constitution; and c) alleged that the government's actions worked an inverse condemnation, or regulatory taking, of Union Corp.'s private property without just compensation, in violation of the Fifth Amendment to the United States Constitution. The United States moved to dismiss the counterclaims, the third-party defendants supported that motion, and all parties fully briefed the matter. This court delayed resolution of the motion in deference to several months of settlement discussions with the Honorable Carol Sandra Moore Wells, Magistrate Judge. When those discussions proved unsuccessful, this court considered and, by Order dated February 17, 2000, granted the motion, dismissing all three counterclaims with prejudice.

Of particular import to the present issue, the reformation counterclaim sought to have this court exercise its equitable power to reform the 1983 Stipulation to reflect the "true intent" of the parties where the writing did not do so. Union Corp. continued to argue that all parties, or at least Union Corp., intended to settle the litigation in 1983; if, as this court had concluded, the language of the Stipulation did not reflect that intent, this was the result either of a mutual mistake of meaning by both parties or of a unilateral mistake by Union Corp. of which the United States knew. The agreement therefore should be reformed to reflect that true intent. The reformation count consisted of thirteen paragraphs but sought to incorporate all the facts and evidence previously asserted and presented in the litigation, particularly as to the various statements by all the parties which Union Corp. argued showed the actual intent behind the Stipulation. In dismissing the reformation counterclaim with prejudice, this court stated as follows:

> The defendants' first counterclaim seeks reformation of the 1983 Stipulation to make it a final settlement of this matter. However, the relevant paragraphs of the counterclaim do not allege at all, much less allege with particularity, fraud or mistake in the formation of the Stipulation. Only proof of such would warrant the equitable remedy of contract reformation. Rather, this counterclaim does no more than complain that this court erred when it held that the 1983 Stipulation did not finally and conclusively settle this matter. This court will not be invited to reconsider that decision further under the guise of entertaining this counterclaim. Accordingly, the counterclaim is dismissed with prejudice for failure to state a claim upon which relief can be granted.

Order dated February 17, 2000 ¶ 1.

In March 2000, Union Corp. filed, without first seeking or receiving leave of this court, its Amended and Restated Counterclaim. This time, Union Corp. pled its reformation counterclaim with particularity in 164 paragraphs, tracing in great detail the history of this litigation and the negotiations of the 1983 Stipulation. The counterclaim quotes at length from the numerous and various statements by all parties and actors in this case using the terms "settle" and "settlement" with reference to the Stipulation; Union Corp. continues to allege that these statements reveal the true intent that the Stipulation was to settle completely and in full the

litigation between it and the United States and only mistake, mutual or unilateral caused the parties not to draw the agreement so as to reflect that intent. Union Corp. did not pursue the due process and takings clause claims, re-alleging both by reference "solely for the purpose of preserving it for appeal." (Def.Am. and Res.Countercl. ¶¶ 165–66) At a Record Conference in March, this court ordered the parties to brief the issue of whether or not the Amended and Restated Counterclaim properly was before it. The parties having done so, this matter is ripe for consideration.

### Discussion

In order to determine whether the Amended and Restated Counterclaim properly is or should be before this court, this court must consider the contours of Rule 15(a) of the Federal Rules of Civil Procedure. That rule provides, in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served … Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). As discussed *supra*, Union Corp. filed its Answer and asserted three counterclaims: seeking reformation of the 1983 Stipulation, alleging violations of its Fifth Amendment right to procedural and substantive due process, and alleging that the United States had committed a taking of Union Corp.'s private property without just compensation in violation of the Fifth Amendment. The United States moved to dismiss the counterclaims for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6); this court granted the motion and dismissed all three counterclaims with prejudice. Union Corp. then filed the Amended and Restated Counterclaim, without seeking leave of this court, reasserting the reformation count with greater particularity.

This court must answer four distinct, although connected and related, questions. If this court answers any one in the affirmative, then the Amended and Restated Counter-

claim properly is before this court; if this court answers all in the negative, that pleading must be stricken and cannot be considered in this action. The four questions are: 1) whether Union Corp. still had the right to amend its pleading one time as a matter of course, even after this court had dismissed the original counterclaims; 2) whether, in dismissing the original counterclaims, this court granted Union Corp. leave to amend and replead the reformation counterclaim; 3) whether, in dismissing the original counterclaims, this court should have granted leave to amend and replead; and 4) whether, treating this as a request for leave to amend and replead, justice requires that such leave be given now. This court addresses each question in turn.

### Whether Union Corp. still had the right to amend as a matter of course

■ The plain language of Rule 15(a) permits a party to amend its pleading "once as a matter of course at any time before a responsive pleading is served." Fed.R.Civ.P. 15(a). This court begins with the undisputed proposition that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not constitute a responsive pleading for Rule 15(a) purposes. *See Centifanti v. Nix*, 865 F.2d 1422, 1431 & n. 9 (3d Cir.1989); *Trant v. Towamencin Township*, Civ. No. 99–134, 1999 WL 317032, *2 (E.D.Pa.1999) (Giles, C.J.); *Hewlett–Packard Co. v. Arch Assocs. Corp.*, 172 F.R.D. 151, 153 (E.D.Pa.1997) (Joyner, J.); *Averbach v. Rival Mfg. Co.*, Civ. No. 85–2794, 1986 WL 3111, *3 (E.D.Pa.1986) (Huyett, J.); *Schnabel v. Building and Constr. Trades Council of Phila. and Vicinity*, 563 F.Supp. 1030, 1035 (E.D.Pa.1983) (McGlynn, J.), *aff'd*, 809 F.2d 1016 (3d Cir.1987); *see also* 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1483, 584–86 (2d ed.1990) (stating the general rule that a dispositive motion is not a responsive pleading). That rule, of course, applies to all pleadings, which includes entire complaints, individual claims within a complaint, and counterclaims. *See* Fed.R.Civ.P. 8(a) (defining pleading as including original claims and counterclaims). Thus, were this case in the procedural posture that Union Corp. had filed its counter-

claims, the United States had moved to dismiss the counterclaims, and no action had been taken on the motion, there is no question that Union Corp. could have filed the Amended and Restated Counterclaim as a matter of course. *See Trant,* 1999 WL 317032, at *2 (stating, in case in which defendants had moved to dismiss a complaint but court had not yet considered or acted on the motion, that plaintiffs could have filed a new complaint as of right); *Schnabel,* 563 F.Supp. at 1035 (holding that amended complaint, filed subsequent to the filing of a motion to dismiss, properly was before the court when deciding that motion). The instant case stands in a different procedural posture, however, because this court granted the motion to dismiss and dismissed the original counterclaims with prejudice prior to Union Corp. filing its amended pleading.

*Three Approaches to the Question*

It is logical, if not entirely undisputed, that the unquestioned right to amend as a matter of course cannot be without limit, but must terminate at some point. *See Phillips v. Borough of Keyport,* 179 F.R.D. 140, 146 (D.N.J.1998).[1] The present issue is when that point is. Specifically, the question is what effect the dismissal of a pleading has on the right to amend that pleading and replead a previously dismissed claim or counterclaim, all as a matter of course and without leave of court. *See* 6 Wright, Miller, & Kane § 1483, at 587 ("[T]he question often arises whether the first sentence of Rule 15(a) continues to be operative once the motion to dismiss is granted."). The various authorities do not agree and the third circuit has not yet spoken to the precise issue in clear and unambiguous terms, making this an open issue for this court. This court discerns three basic approaches and discusses each in turn.[2]

The first approach, which has been applied by some decisions from the ninth circuit, is that the right to amend once as a matter of course never terminates, even if the original pleading is dismissed by the district court, until a responsive pleading is filed. *See Mayes v. Leipziger,* 729 F.2d 605, 607 (9th Cir.1984) (quoting *Breier v. Northern Calif. Bowling Proprietors' Ass'n,* 316 F.2d 787, 789 (9th Cir.1963)) ("Neither the filing nor granting of such a motion before answer terminates the right to amend."); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1520 (9th Cir.1983) ("This right of amendment can survive dismissal of a complaint if such dismissal precedes the defendant's answer."), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984); *see also* 3 James W. Moore, Moore's Federal Practice § 15.12[1], 16 (3d ed.1995) (noting that the ninth circuit allows amendment as of right even after dismissal of the complaint, since the motion to dismiss is not a responsive pleading). This approach is based on a rigid, literal reading of the language of Rule 15(a) that the right to amend continues until a responsive pleading is filed, regardless of what might happen prior to the filing of that responsive pleading; because the rule is silent as to the effect of an intervening dismissal of that pleading, such action has no effect on the right to amend. *Cf. Whitaker v. City of Houston,* 963 F.2d 831, 835 (5th Cir.1992) ("A literal interpretation of Rule 15(a), therefore, would allow a plaintiff to amend as a matter of course even after a motion to dismiss has been granted.").

The second approach, adopted in the majority of circuits that have addressed the issue, is that the right to amend as a matter of course terminates with the granting of a

---

1. The right obviously terminates once a party has amended its pleading one time, because the plain language of Rule 15(a) permits a party to amend as a matter of course only "once." *See* Fed. R.Civ.P. 15(a). Thus, this court rejects the argument of the third party defendants that Union Corp.'s position would envelope a district court in an unending cycle of amended pleadings. No matter what the outcome of the present procedural dispute, Union Corp. will be unable to amend its counterclaims again without leave of this court.

2. Much of the case law on this issue involves complaints and claims within complaints, rather than counterclaims. However, because Rules 12(b) and 15(a) refer to pleadings, and pleadings include claims and counterclaims, *see* Fed. R.Civ.P. 8(a), Fed.R.Civ.P. 12(b), the same principles control amendment of the counterclaims in this case.

12(b)(6) motion and dismissal of the claims or counterclaims in the pleading. *See Acevedo–Villalobos v. Hernandez,*, 22 F.3d 384, 388 (1st Cir.) (citing *Jackson v. Salon,* 614 F.2d 15, 17 (1st Cir.1980)) ("[A] plaintiff's time to amend his or her complaint as a matter of right . . . terminates upon a district court's dismissal of the complaint."), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994); *McDonald v. Hall,* 579 F.2d 120, 121 & n. 5 (1st Cir.1978) (per curiam) (stating that Rule 15(a) allows a party to amend "at any time prior to the court's acting on the motion" to dismiss); *Elfenbein v. Gulf & Western Indus., Inc.,* 590 F.2d 445, 448 n. 1 (2d Cir.1978) ("[I]t is equally well established that this right [to amend] terminates upon the granting of the motion to dismiss."); *Whitaker,* 963 F.2d at 837 (adopting the rule that "the right to amend as of course under Rule 15(a) terminates with an order of dismissal"); *id.* at 835 ("After dismissal, the plaintiff does not have the right to amend as a matter of course."); *Dorn v. State Bank of Stella,* 767 F.2d 442, 443 (8th Cir.1985) (per curiam) ("After a complaint is dismissed, the right to amend under Fed.R.Civ.P. 15(a) terminates.") (citations omitted); *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1131 (10th Cir.1994) ("Because defendants' motions to dismiss . . . were not responsive pleadings, [plaintiff] could have amended her complaint *prior to dismissal* without requesting or receiving leave of the court.") (emphasis added); *Czeremcha v. International Ass'n of Machinists and Aerospace Workers,* 724 F.2d 1552, 1556 (11th Cir.1984) (adopting the rule that "after a complaint is dismissed the right to amend under Rule 15(a) termi-

nates"); *see also* 3 Moore § 15.12[1], at 17 & n. 5 (noting that several circuits take the position that a plaintiff's right to amend as of course terminates on dismissal of the pleading and a party thereafter must move for leave to amend). This also is the approach adopted by several district courts within the third circuit. *See Phillips,* 179 F.R.D. at 146 (concluding that plaintiffs' right to amend the complaint expired on dismissal of the pleading, even if no responsive pleading had been filed and even if the order of dismissal had not been affirmed on appeal); *Hewlett–Packard,* 172 F.R.D. at 153 ("It is generally held, however, that once a motion to dismiss has been granted,· a plaintiff may amend its pleading only by leave of court."); [3] *Averbach,* 1986 WL 3111, at *3 ("Once a motion to dismiss has been granted, however, a plaintiff does not have a right to amend a complaint.").

The third approach, adopted in the seventh circuit and endorsed by one treatise on civil procedure, holds that the right to amend once as a matter of course terminates only after the entry of both an order granting a motion to dismiss and dismissing the pleading and of a final judgment of dismissal of the action; the right to amend without leave survives the mere dismissal of a claim or counterclaim. *See* 6 Wright, Miller, & Kane § 1483, at 588–89.[4] In the seventh circuit, an "order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right . . . . If final judgment is entered dismissing the case, however, the plaintiff loses that right." *Camp v. Gregory,* 67 F.3d 1286, 1289 (7th

---

3. *But see Waterloov Gutter Protection Sys. Co., Inc. v. Absolute Gutter Protection,* 64 F.Supp.2d 398, 408–09 n. 10 (D.N.J.1999) (criticizing *Hewlett–Packard* based on that court's reliance on a treatise standing for the opposite proposition). The decision in *Hewlett–Packard* illustrates some of the confusion surrounding this issue. While that court asserted the legal rule that leave was required once the motion to dismiss had been granted, *see Hewlett–Packard,* 172 F.R.D. at 153 (citing *Averbach,* 1986 WL 3111, at *3), it ultimately relied on the plaintiff's fifteen-month delay in filing the amended complaint to conclude that leave was required. *See Hewlett–Packard,* 172 F.R.D. at 153.

4. The right to amend as a matter of course under this approach also terminates if a substantial

period of time has elapsed since the dismissal. *See* 6 Wright, Miller, & Kane § 1483, at 589; *id.* at 590 (stating that this practice "appears sound"); *compare Hewlett–Packard,* 172 F.R.D. at 153 (holding that leave to amend was required after the passage of fifteen months) *with Waterloov,* 64 F.Supp.2d at 408 (holding that no leave was required where the amended complaint was filed within days of dismissal). That issue is not relevant in the instant case, as Union Corp. filed its Amended and Restated Counterclaim approximately two weeks after this court dismissed the original counterclaims by Order dated February 17, 2000, and there is no suggestion that Union Corp. waited too long to amend.

Cir.1995) (citations omitted), *cert. denied,* 517 U.S. 1244, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996).[5] Some district courts within the third circuit also adopt this approach. *See Waterloov,* 64 F.Supp.2d at 407–08 (citing *Schnabel,* 563 F.Supp. at 1035) ("Courts have held generally that a party may amend its pleading without seeking leave of court after the pleading has been dismissed, as long as the amendment is made within a reasonable time and no responsive pleading has been served.");[6] *Fearon v. Community Fed. Sav. and Loan of Phila.,* 119 F.R.D. 13, 15 (E.D.Pa.1988) (Huyett, J.) (holding that the right to amend terminates where there has been a final order). This approach is based on principles of finality—only after the entire action has been dismissed in a final and appealable order should the right to amend terminate, at which point the plaintiff either may appeal or seek leave of the district court to reopen the case so she may pursue an amended complaint. *See Camp,* 67 F.3d at 1289.

The third circuit has not addressed this issue clearly and unambiguously. However, the court has spoken to three points of law that provide this court with some guidance as to the proper approach to adopt. In touching on this issue, the court of appeals shifts between speaking of dismissals and judgments of dismissal, even within one paragraph of one opinion. *Compare Smith v. National Collegiate Athletic Ass'n,* 139 F.3d 180, 189 (3d Cir.1998) ("After the district court *enters judgment on a motion to dismiss,* a plaintiff no longer may amend her complaint as of right.") (emphasis added, citations omitted), *rev'd on other grounds,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 ·(1999) *with Smith,* 139 F.3d at 189 ("[E]ven though Smith no longer was entitled to amend her complaint as of right *after the dismissal of her claim,* it was within the district court's discretion to grant her leave to amend.") (emphasis added, citations omitted); *see also Newark Branch, NAACP v. Town of Harrison,* 907 F.2d 1408, 1417 (3d Cir.1990) (referring to "judgments of dismissal" as the point after which leave to amend may be granted upon a proper showing). By using all these terms interchangeably, the court appears to mean judgment on a motion to dismiss not in the formal Rule 58 sense, 'but merely to reference the district court's decision and order granting the Rule 12(b)(6) motion and dismissing a claim or counterclaim. *Cf. Whitaker,* 963 F.2d at 837 (using terms "order of dismissal" and "dismissal" interchangeably). This supports adopting the second, or majority, approach. Second, in this circuit the dismissal of a claim with prejudice is a final and appealable order that confers jurisdiction on the court of appeals. *See Manze v. State Farm Ins. ·Co.,* 817 F.2d 1062, 1064 (3d Cir.1987); *see also Borelli v. City of Reading,* 532 F.2d 950, 951–52 (3d Cir.1976) (per curiam) (stating that an order dismissing a complaint without prejudice is neither final nor appealable, unless the plaintiff cannot amend or declares her intention to stand on the complaint). At least in some cases, therefore, an order granting a motion to dismiss and dismissing a pleading is a final order, without the need for further action by the district court. It follows that the order granting the motion

---

5. Some cases in the ninth circuit also appear to adopt this approach. *See Lindauer v. Rogers,* 91 F.3d 1355, 1357 (9th Cir.1996) ("[O]nce judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened."); *Jarvis v. Regan,* 833 F.2d 149, 155 (9th Cir.1987) ("Where a final judgment is entered following dismissal of an action, the plaintiff no longer has the right to amend the complaint as a matter of course."); *Worldwide Church of God, Inc. v. State of Calif.,* 623 F.2d 613, 616 (9th Cir.1980) (stating that a party may amend as a matter of right before the filing of a responsive pleading or the entry of a final judgment).

6. In support of this conclusion, the *Waterloov* court relied on a decision from this district, *Schnabel, supra. See Waterloov,* 64 F.Supp.2d at 407–08. However, *Schnabel* does not stand for the proposition for which the *Waterloov* court cited it. In *Schnabel,* the plaintiffs filed, without leave of court, an amended complaint after the defendants moved to dismiss the original complaint but before the court took any action on the motion, and the court held that the amended complaint properly was before it in addressing the motion to dismiss. *See Schnabel,* 563 F.Supp. at 1035. The court did not need to reach, and did not reach, the question of whether the plaintiffs could have filed the amended pleading as of right even after the court had ruled on the motion to dismiss.

should, in all cases, have some effect; one effect would be to terminate the right to amend as a matter of course. Third, the court of appeals has suggested a procedure for district courts to follow in ruling on motions to dismiss, pursuant to which the district judge expressly should state, at the time of granting the motion, that a plaintiff has leave to amend the claim or complaint within a specified period of time. *See District Council 47, Am. Fed'n of State, County and Municipal Employees v. Bradley,* 795 F.2d 310, 316 (3d Cir.1986) (quoting *Borelli,* 532 F.2d at 951 n. 1); *see also* 6 Wright, Miller, & Kane § 1483, at 590 ("Indeed, the desirable practice may be to set a specific period after a motion to dismiss has been granted in which plaintiff may file an amended complaint."). This indicates that a district court retains the power and discretion, when granting the motion and dismissing the claim, to control whether or not the party may amend the pleading or replead a claim. This in turn indicates that the right to amend as a matter of course actually terminated with the granting of the motion to dismiss.

*Chosen Approach*

■ This court agrees with the majority of circuits and concludes that the proper approach is the majority approach: the right under Rule 15(a) to amend a pleading once as a matter of course terminates upon the granting of the motion to dismiss and the dismissal of the claims or counterclaims; once the motion to dismiss has been granted, a party may not amend or replead except with leave of court. There are several reasons for adopting this approach.

First, it strikes the proper balance between Rules 15(a) and 12(b)(6), by giving substantial effect and meaning to a district court's determination that a pleading failed to state a claim and should be dismissed, while permitting a party to amend as a matter of course at any time prior to that decision. It similarly leaves the district court with the discretion to determine the basis for dismissing a claim or counterclaim, to determine whether or not a claim or counterclaim might be repled meritoriously, to determine whether or not amendment is appropriate, and generally to control the pleadings in the cases before it. Under the majority approach, once a court makes a ruling as to the legal sufficiency of a pleading, that ruling is dispositive as to the pleading and amendment is possible only if the district court finds, in its discretion, that such amendment would be effective and appropriate and grants the party leave to replead. By contrast, either of the other approaches would permit a party automatically to have two bites at the apple, two chances to plead any claim or counterclaim.[7] The first order of dismissal would be rendered, in some sense, advisory, providing little more than a hint to the pleading party as to how it could better plead its claim. Such an order certainly would not substantially advance a case towards resolution. The pleading party would have an absolute, unabridged right in all cases to replead the identical claim, to force the opposing party again to move to dismiss the identical claim under Rule 12(b)(6), and to force the district court to consider anew the legal and factual sufficiency of the claim. The ninth circuit and seventh circuit approaches would, in effect, require a court to reconsider, at least once, any decision granting a 12(b)(6) motion, simply on the pleading party's hope that the court might change its legal ruling and decide that the pleading is indeed sufficient. There would be no requirement of showing that the first decision of dismissal involved the type of manifest error of law by the court that ordinarily would be necessary for reconsideration. *Cf. Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985) (stating that one basis for granting a motion to reconsider

---

7. Arguably, a pleader may be somewhat constrained by Federal Rule 11 from re-filing, without seeking leave, the identical dismissed claim or counterclaim. Rule 11 requires that a party certify that any claims or legal contentions are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). However, if a par-

ty had such a good faith belief in the merits of her claim when she originally filed it, she could, consistent with Rule 11, re-file it as a matter of course simply in the hope of convincing the court, the second time around, that the claim in its amended or repled form has merit or of convincing the court that it erred in its initial decision to dismiss the claim.

is to correct manifest errors of law), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). In short, either the first or third approach, by not terminating the right to amend upon dismissal of the particular pleading, and by thus limiting the force of the court's decision of dismissal, would construe Rule 15(a) to render Rule 12 meaningless and ineffective; this court declines to adopt such a construction of the rules. *See Clardy v. Duke Univ.,* 299 F.2d 368, 370 (4th Cir.1962) (per curiam) ("Rule 15(a) is not to be construed so as to render Rule 12 meaningless and ineffective.").

Second, the majority approach ensures that the effect of a dismissal and the right to replead a claim will be the same in all cases and all situations, regardless of whether the dismissed claim was the only claim in a complaint (or all claims in a multi-count complaint); some, but not all, claims in a multicount complaint; or, as here, counterclaims asserted in an otherwise-sufficient answer. Under the majority approach, none could be repled as a matter of course after dismissal, leave of court always would be required. This enables the party prevailing on the motion to dismiss to rely on the dismissal and to have the opportunity to oppose any amendment that would bring a particular claim back into the case. *Cf.* 6 Wright, Miller, & Kane § 1483, at 950. By contrast, under the seventh circuit's approach, the rules for amending or repleading as of right would apply differently depending on the particular pleadings at issue. Under that court's approach, where all the claims in a complaint were dismissed with prejudice, a final and appealable order or judgment as to the entire action could issue at the time of dismissal, *see Manze,* 817 F.2d at 1064 (order dismissing complaint with prejudice was final and appealable), thus terminating the right to amend as a matter of course. On the other hand, where, as here, only counterclaims were dismissed and the claims in the original complaint and in the third-party complaint remain, no final and appealable order could issue without the court first making certain findings, *see* Fed.R.Civ.P. 54(b) (providing that where more than one claim is presented in an action, the court may enter a final judgment on less than all claims only upon an express finding that there is "no just reason for delay"), thus the right to amend as a matter of course likely would continue unabridged. Because the claims of the United States against Union Corp. and the other defendants remain in this case, as do Union Corp.'s claims against various third party defendants, this plainly is a case in which no final and appealable order as to the dismissed counterclaims could issue, even under the standards of Fed.R.Civ.P. 54(b). Such a dichotomy denies the prevailing party the opportunity to rely on the effectiveness of the dismissal of claims in all cases.

Third, the majority approach is most consistent with Rule 15(a)'s focus on particular claims rather than on entire actions, an important distinction under the Rules of Civil Procedure. A claim, or claim for relief, has been defined as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Smith, Kline & French Labs. v. A.H. Robins Co.,* 61 F.R.D. 24, 28–29 (E.D.Pa.1973) (Fogel, J.) (quoting *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.,* 133 F.2d 187 (2d Cir.1943)). On the other hand, an action, or civil action, is the "sum total of the claims which the parties assert against each other." *Smith, Kline,* 61 F.R.D. at 29; *cf.* Fed.R.Civ.P. 41(b) (discussing dismissal "of an action or of any claim"). The seventh circuit's approach forces that distinction into the application of Rule 15(a) by having the right to amend as a matter of course turn on whether what was dismissed was a claim or an entire action.

However, there is no textual basis for doing so. Rules 12(b) and 15(a) speak in terms of pleadings. *See* Fed.R.Civ.P 12(b) (describing "claim for relief in any pleading"), Fed.R.Civ.P. 15(a) (describing the right to amend a "pleading"), and pleadings are defined in terms of particular claims or counterclaims. A party moving under Rule 12(b)(6) may challenge the sufficiency of one, some, or all of the claims for relief contained in a pleading; the overall action is not directly at issue. Similarly, a party amending under Rule 15(a) may add, drop, or restate one, some, or all of the claims for relief contained in a pleading; the overall action is not directly at issue. *Cf. Smith, Kline &*

*French Labs.*, 61 F.R.D. at 31 (holding that Rule 15(a) applied to situations involving the adding or dropping of individual claims within a multi-count complaint). This is especially true in the instant case, where the dispute is over one counterclaim and everything else comprising the action—the claims in the amended complaint, the third-party claims, the counterclaims by the third-party defendants—remains unaffected. Nothing in the language of either rule suggests that its effect and application should turn on whether only one or some claims or counterclaims or the entire action is at issue. Although that is relevant to the question of whether there can be a final order for appealability purposes, it is not relevant to the effect of the order of dismissal on the right to replead. The focal point is the dismissal of the claim or counterclaim in the pleading; that is when the right to amend without leave properly terminates.

Finally, taking this approach brings this court in line with several district courts within this circuit that have addressed the issue directly. *See Phillips,* 179 F.R.D. at 146; *Hewlett–Packard,* 172 F.R.D. at 153; *Averbach,* 1986 WL 3111, at *3. This approach also is consistent with, and can be justified by, the statements of the third circuit. In addressing amendment of pleadings, the third circuit alternately refers to "dismissal of [a] claim," *Smith,* 139 F.3d at 189, "judgments of dismissal," *Newark Branch, NAACP,* 907 F.2d at 1417, or "judgment . . . entered on a motion to dismiss." *District Council 47,* 795 F.2d at 321 (Aldisert, C.J., dissenting). In this court's view, those phrases, used by the third circuit to mean essentially the same thing, all refer to the district court's decision and order granting the motion to dismiss and dismissing the claim. This interpretation supports this court's conclusion that the right to amend as a matter of course terminates when the court rules on the motion to dismiss, determines

that the pleading fails to state a claim, and orders the pleading dismissed. Further, as discussed *supra,* the third circuit's recommended procedures leave it to the district court, acting within its discretion at the time it rules on a motion to dismiss, to determine whether or not amendment of a pleading would cure the defect and whether or not a party should be permitted to amend and replead a claim and to so indicate in the order of dismissal. *See District Council 47,* 795 F.2d at 316; *Borelli,* 532 F.2d at 951 n. 1. In other words, this court has the power both to dismiss the claim or counterclaim for failure to state a claim and to declare at that time whether or not there will be an opportunity to amend and replead. It follows logically that the dismissal itself necessarily has some effect on the pleading party's continued right to amend as a matter of course—it terminates that right. If it did not, the power to declare whether there is an opportunity to replead would be meaningless, because the party would have the right to do so as a matter of course, regardless of what the court declared, at least after the first time a claim was dismissed.[8] Instead, amendment is permissible after dismissal only if the court determines and declares that such amendment is possible and appropriate and grants the party leave to amend and replead.[9] It seems to this court that the third circuit would agree with the approach taken by the majority of circuits and that is the approach that this court will apply in the instant case.

◼ It must be emphasized that this conclusion does not leave Union Corp., or any other party, entirely powerless to amend after dismissal of a claim. Parties may amend with leave of court and "leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("In the absence of any apparent or declared

---

8. Nothing in *District Council 47* or *Borelli* suggests that the suggested procedure is or should be different the first time the court dismisses the pleading as opposed to subsequent times.

9. Some of the confusion on this issue perhaps results from the mistaken belief that, where the original claim was dismissed without prejudice or with leave to amend, the subsequent amend-

ment is one made as a matter of course, because it was filed without the party first moving for such leave. In fact, such amendment actually occurs only with leave of court, leave simply having been granted by the district court without a formal request by a party, which the court may do in its discretion. *Cf. District Council 47,* 795 F.2d at 316.

reason ... the leave sought should, as the rules require, be 'freely given.' "); *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir.1989) ("[C]ourts have shown a strong liberality ... in allowing amendments under Rule 15(a).") (internal quotation marks and citations omitted, alteration in original). And the right of a party to seek, and the discretion of this court to grant, such leave to amend continues beyond dismissal of the claim. *See Smith,* 139 F.3d at 189; *Newark Branch, NAACP,* 907 F.2d at 1417; *see also Czeremcha,* 724 F.2d at 1556. In practice, therefore, parties actually will be able to file an amended pleading following a dismissal in almost all circumstances simply by requesting such leave from the court, given the fact that a district court is " 'enjoined to "freely" permit amendment as a matter of discretion.' " *District Council 47,* 795 F.2d at 321 (Aldisert, C.J., dissenting) (quoting *Kauffman v. Moss,* 420 F.2d 1270, 1276 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970)). It could be argued that this court is adopting an overly formalistic approach, given the likely practical result from the liberal amendment requirements. However, this "seemingly formal approach is actually predicated on the courts' desire to satisfy Rule 15's policy of freely granting leave to amend while preventing plaintiffs from having the unfettered ability to reopen every case by merely filing an amendment." 3 Moore's Federal Practice § 15.12[1], at 17–18. Moreover, this approach accounts for those situations in which amendment would not be proper.

■ This court holds, therefore, that Union Corp. did not have the right to file its Amended and Restated Counterclaim for reformation as a matter of course under Rule 15(a). By Order dated February 17, 2000, all three of Union Corp.'s original counterclaims, for reformation, due process violations, and inverse condemnation, were dismissed; that dismissal terminated Union Corp.'s Rule 15(a) right to amend and replead once as a matter of course. The Amended and Restated Counterclaim is not properly before

this court as filed, unless this court, in its discretion, either granted or now grants Union Corp. leave to file it. The answer to the first of the four questions in this case, therefore, is No.

**Whether Leave to Amend Was Granted**

■ Inherent in the district court's discretion freely to grant the pleading party leave to amend and replead is the discretion and power to grant such leave at the time of dismissal, without any request being made by the pleading party. *See District Council 47,* 795 F.2d at 316 (quoting *Borelli,* 532 F.2d at 951 n. 1) ("[W]e suggest that district judges expressly state, where appropriate, that the [pleader] has leave to amend.").[10] Further, the preferred practice is to grant leave to amend at the time of dismissal whenever it appears that the pleader could cure the defect by amendment. *See District Council 47,* 795 F.2d at 316 (holding that district court should have granted leave to amend to provide sufficient factual allegations in support of the claim); 6 Wright, Miller, & Kane § 1483, at 587 ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.").

■ The second question, therefore, is whether, in dismissing Union Corp.'s original reformation counterclaim, this court granted Union Corp. leave to amend and replead that counterclaim. If it did, then the Amended and Restated Counterclaim properly is before this court. This court's Order dated February 17, 2000, dismissing all of Union Corp.'s counterclaims, made no mention of leave to amend.[11] In this circuit, however, a court need not use the magic word amendment in order to address the issue of leave under the procedures suggested in *Borelli* and re-affirmed in *District Council 47.* Rather, "an implicit invitation to amplify the complaint is found in the phrase 'without prejudice.' " *Borelli,* 532 F.2d at 951. It

10. *See supra* n. 9.

11. From this, Union Corp.'s counsel argues that it was unclear whether or not leave had been granted and that Union Corp. therefore filed the Amended and Restated Counterclaim in order to protect its rights.

must follow, of course, that an implicit dis-invitation (or declination to proffer an invitation) to amend or replead a claim is found in the phrase "with prejudice." While a dismissal without prejudice suggests that the deficiency in the pleading may be corrected, *see Borelli,* 532 F.2d at 951, a dismissal with prejudice should suggest precisely the opposite. In other words, the phrase "with prejudice" reflects the district court's determination that it "thought an amendment" was *not* possible; by using this phrase, the "district judges expressly state ... that the plaintiff" does *not* "ha[ve] leave to amend." *Cf. Borelli,* 532 F.2d at 951 n. 1.

█ Further, an order dismissing a complaint with prejudice is a final and appealable order. *See Manze,* 817 F.2d at 1064. Thus the phrase "with prejudice" indicates that no further pleading may be done in the district court without the court's leave. It is common practice of courts within this district to dismiss with prejudice claims that cannot be replead and to dismiss without prejudice claims that can be replead and for which leave to amend is granted. *Compare Dee v. Marriott Int'l, Inc.,* Civ. No. 99–2459, 1999 WL 975125, *4 (E.D.Pa.1999) (Yohn, J.) (dismissing claim against employer defendant for assault and battery with prejudice where employer could not be held vicariously liable as a matter of Pennsylvania law) *with id.* at *5 (dismissing wrongful discharge claim without prejudice, and granting leave to amend, where dismissal was based on a lack of certain necessary factual allegations which could be added on amendment); *see also Dee v. Marriott Int'l, Inc.,* Civ. No. 99–2459, 2000 WL 62309, *2–3 (E.D.Pa.2000) (Yohn, J.) (later opinion in same action, dismissing amended wrongful discharge claim, this time with prejudice, because the plaintiff apparently never would be able to allege certain facts necessary to her claim).

In the Order dated February 17, 2000, all of Union Corp.'s counterclaims were dismissed expressly with prejudice, *see* Order dated February 17, 2000, at 1, including the reformation counterclaim. *See* Order dated February 17, 2000 ¶ 1 at 2. Although the phrase "leave to amend is denied" did not appear in the Order, the meaning of "dis-missed with prejudice" clearly is established in this circuit. By dismissing with prejudice, therefore, this court declined to grant Union Corp. any leave to amend or replead any of the counterclaims, suggested that the pleading deficiency could not be corrected, and thus expressly stated that Union Corp. was denied such leave to amend. The answer to the second question, therefore, is No.

## Whether Leave to Amend Should Have Been Granted

"Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane § 1483, at 587. The third circuit has held that leave to amend must be granted in that situation; indeed, a district court abuses its discretion when it dismisses a claim for want of sufficient factual allegations without granting leave to amend and replead and without giving the pleading party an opportunity to cure the factual deficiencies of the original pleading. *See Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir. 1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); *District Council 47,* 795 F.2d at 316. This court could have granted such leave, even after dismissal of the original counterclaims, if the appropriate standard for leave to amend under Rule 15(a) was satisfied. *See Newark Branch, NAACP,* 907 F.2d at 1417.

The third question, therefore, is whether, in dismissing Union Corp.'s original counterclaims, particularly the reformation counterclaim, this court in its discretion should have dismissed without prejudice and granted leave to replead and whether this court abused its discretion in failing to do so. *See Smith,* 139 F.3d at 190 (quoting *Foman,* 371 U.S. at 182, 83 S.Ct. 227) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."). If this court abused its discretion in initially denying leave to amend, it now may treat the new pleading as properly before it.

█ A "district court justifiably may deny leave to amend on grounds such as

undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." *Smith,* 139 F.3d at 190 (citations omitted). The only arguable basis in the instant case for denying leave is futility of amendment; an "amendment is futile if the [pleading], as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Id.* (citations omitted). In determining whether amendment would be futile, the district court applies the same standard of sufficiency as under Fed.R.Civ.P. 12(b)(6). *See id.* (citations omitted).

■■■ This court must examine the basis for dismissing those original counterclaims to determine whether amendment would have been futile, that is, whether amendment could have cured the pleading defects. A Rule 12(b)(6) motion may challenge either the factual or the legal sufficiency of a claim and dismissal can be based on a finding of either type of pleading defect. A claim is legally insufficient if, even taking all the factual allegations as true and making every favorable inference in favor of the pleader, no relief could be granted because the complaint states a wrong for which there clearly is no legal remedy or because the plaintiff is without the right or the power to assert that particular claim. *See Port Auth. Of N.Y. and N.J. v. Arcadian Corp.,* 189 F.3d 305, 312 (3d Cir.1999); *see also Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (stating that the question is whether the facts alleged, even if true, fail to support a claim). By contrast, a complaint is factually insufficient if it fails to allege sufficient facts, or fails to allege facts with sufficient detail, as to show a claim entitling the pleading party to relief. As a practical matter, such dismissals are relatively rare, given that a pleader only must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, the pleader still must set forth sufficient information to outline the elements of the claim or to permit inferences to be drawn that these elements exist. *See Kost,* 1 F.3d at 183 (quoting 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1357, 340 (2d ed.1990)). A pleading that fails to outline

some necessary element of a claim may be said to be factually insufficient under Rule 12(b)(6). Moreover, certain factual allegations, notably fraud or mistake, must be pled with particularity, *see* Fed.R.Civ.P. 9(b); dismissals based on factual insufficiency are more common in such circumstances.

■■ The nature of the defect in a pleading—legal or factual—determines whether the deficiency could be corrected by amendment and therefore whether a district court should exercise its discretion to dismiss without prejudice and grant leave to replead. "Ordinarily where a complaint is dismissed on Rule 9(b) 'failure to plead with particularity' grounds alone, leave to amend is granted." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1435 (3d Cir.1997) (citations omitted); *see also Dee,* 1999 WL 975125, at *5 (dismissing without prejudice based on the lack of factual allegations as to a particular necessary element of the claim for wrongful discharge and granting leave to amend). By contrast, if dismissal is based, in whole or in part, on the legal insufficiency of the claim, amendment would be futile and leave to amend need not be granted. *See Burlington Coat Factory,* 114 F.3d at 1435 ("Therefore, to the extent we can affirm the district court's determinations on Rule 12(b)(b) [*sic* ] grounds *alone* . . . we shall affirm the denial of leave to replead.") (emphasis in original); *see also Dee,* 1999 WL 975125, at *4 (dismissing with prejudice, and therefore without leave to amend, where defendant employer could not be vicariously liable for assault and battery as a matter of state law). In a case of legal insufficiency, even the pleading of additional facts, or the pleading of facts with greater particularity, would not enable the claim to survive a Rule 12(b)(6) motion, because the defect in the pleading is the absence of any legal basis for recovery on the claim. *See Burlington Coat Factory,* 114 F.3d at 1435. Amendment in that case would be futile, therefore denial of leave to amend would have been proper. *See Smith,* 139 F.3d at 190.

■■ The crux of the present dispute is the basis for dismissal of the reformation counterclaim, which is the one that Union

Corp. now seeks to re-assert and prosecute.[12] Union Corp. asked this court to exercise its equitable power to reform the 1983 Stipulation between Union Corp. and the United States into a full settlement of this litigation, after this court rejected Union Corp.'s argument that the Stipulation, as written, was such a settlement. Pennsylvania law permits reformation of a contract that fails to reflect the agreement actually reached by the parties, where there was mistake in the making of the contract. *See Rupp v. Consolidated Rail Corp.*, Civ. No. 89–719, 1990 WL 99163, *1 (E.D.Pa.1990) (Lord, J.). Mistake or fraud must be pled with particularity. *See* Fed.R.Civ.P. 9(b).

■ The paragraph of the Order dated February 17, 2000, discussing and dismissing this counterclaim with prejudice, was set-forth in full *supra*. An examination of the relevant language suggests that the dismissal was due to both legal and factual defects in the counterclaim, or as the third circuit put it, was on both 12(b)(6) and 9(b) grounds. *See Burlington Coat Factory*, 114 F.3d at 1435. On the one hand, this court noted Union Corp.'s failure to allege, and to allege with particularity, facts showing fraud or mistake. *See* Order dated February 17, 2000 ¶ 1, at 1–2. This is a factual defect in the pleading, one that could be corrected by amendment; had this been the sole basis for dismissal, it is arguable that leave to amend should have been granted. *See Burlington Coat Factory*, 114 F.3d at 1435 ("[W]here the district court's dismissals can be justified

only on Rule 9(b) particularity grounds we reverse the denial of leave to replead."). However, this court also stated that the reformation counterclaim "does no more than complain that this court erred" in holding that the 1983 Stipulation was not a final settlement and stated that this court would not be invited to reconsider that legal decision any further. *See* Order dated February 17, 2000 ¶ 1, at 1–2. That was a legal defect in the pleading, one that could not be overcome by amendment, and the dismissal therefore properly was with prejudice.

The dismissal of the original reformation counterclaim with prejudice must be considered in the context of the entire litigation and prior pleading. This court considered on three different occasions whether or not the 1983 Stipulation was a complete settlement agreement and this court rejected, explicitly or implicitly, Union Corp.'s argument that it was on two of those occasions (and deferred ruling on the third occasion). In briefing the government's motion to amend its complaint and Union Corp.'s subsequent motion to dismiss the Amended Complaint, the parties argued at length not only about the meaning of the plain language of the Stipulation, but also about extrinsic evidence, such as the numerous comments made throughout the course of this litigation by both parties using terms such as "settle" and "settlement" in discussing the Stipulation. This court considered all of that evidence and concluded as a matter of law, both in granting the United States leave to amend the complaint and in

---

**12.** Union Corp. has not sought to replead either its due process or inverse condemnation counterclaims; the Amended and Restated Counterclaim re-alleges both by reference "solely for the purpose of preserving it for appeal." It is worth considering briefly whether leave to amend should have been granted as to either one. As to the procedural due process claim, this court held that Union Corp. did not possess a legally protected property interest, established by any positive rule of law, in using the contractor of its choice to perform the clean-up work on the Cottman Avenue site. *See* Order dated February 17, 2000 ¶ 2, at 2–3. As to the substantive due process claim, this court held that it was without power to review the EPA decision, because the matter at issue was committed to EPA agency discretion by law. *See* Order dated February 17, 2000 ¶ 2, at 3–4. Both aspects of the due process counterclaim were dismissed based on legal de-

fects—Union Corp. was without power to assert either constitutional claim under any facts it could allege—thus dismissal without leave to amend was proper. As to the inverse condemnation claim, this court found three bases, all legal rather than factual, for finding that Union Corp. failed to state a claim: 1) Union Corp.'s claim of improper governmental action was not cognizable under the takings clause, *see* Order dated February 17, 2000 ¶ 3, at 4; 2) this court was without subject matter jurisdiction to hear the claim, given the amount of compensation sought, *see id.* ¶ 3, at 5; and 3) the claim for an injunction to prevent the taking was premature until Union Corp. at least had attempted to avail itself of the processes for monetary compensation in a court of competent jurisdiction. *See id.* ¶ 3, at 5–6. The inverse condemnation counterclaim was dismissed based on its legal insufficiency and dismissal without leave to amend was proper.

denying Union Corp.'s motion to dismiss, that this did not establish the Stipulation as a final settlement requiring a release of defendants and dismissal of the action against them. Nor did this evidence show that the collective or known intent of the parties was to reach such a final and conclusive settlement. Moreover, as discussed *supra*, the EPA had determined by 1998 that Union Corp.'s remediation performed pursuant to the Stipulation had not been effective in eliminating the soil and groundwater contamination at the Cottman Avenue site and that Union Corp., as property owner, continued to be responsible. The Stipulation had not been performed fully in any event, therefore depriving this court of the power to dismiss Union Corp. from the action.

Thus, although this was the first time that Union Corp. filed a counterclaim against the United States, the legal issues involved in that counterclaim previously had been determined in this litigation. This court's legal determination as to the effect of the Stipulation was conclusive under the law of the case doctrine, which directs courts not to reopen or re-decide legal issues that were resolved earlier in the litigation. *See Agostini v. Felton,* 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir.1997) [hereinafter *PIRG* ]. Law of the case directs this court's exercise of its discretion and suggests that this court should be "loathe" to revisit prior decisions in the absence of extraordinary circumstances, such as where the initial decision was clearly erroneous and where adherence to it would work a manifest injustice, *see Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), where new evidence is available, or where supervening new law has been announced. *See PIRG,* 123 F.3d at 116–17; *see also Agostini,* 521 U.S. at 236, 117 S.Ct. 1997 (holding that law of the case did not apply where the controlling legal standard under the Establishment Clause of the First Amendment had changed).

In its Order dated February 17, 2000, this court stated that the reformation counterclaim merely attempted to assert the same legal arguments and to present the same evidence in pleading form and this court expressly declined to revisit its legal conclusion, effectively adhering to law of the case. Dismissal of the original counterclaim therefore was based on its legal insufficiency—it sought to raise a legal argument previously considered and rejected and therefore barred by law of the case; in the third circuit's terms, dismissal was under Rule 12(b)(6). This court already had concluded that there was no legal basis for finding the Stipulation, and the work performed under it, to require or justify a complete settlement and release by the United States or dismissal of this action. Regardless of the level of detail with which Union Corp. might replead, amendment would have been futile. Thus, denial of leave to amend at the time of dismissal was not an abuse of this court's discretion. The answer to the third question, therefore, is No.

**Whether this Court Should Grant Leave to Amend Now**

 Even if this court initially denied Union Corp. leave to amend at the time of dismissal such that the pleading is not proper as filed, this court may, in its discretion, now treat the Amended and Restated Counterclaim as if Union Corp. first sought leave to amend and consider whether leave now should be granted. *See Hewlett–Packard,* 172 F.R.D. at 153 (treating amended pleading as a motion to amend). This court again looks to the standards of Rule 15(a) and the requirement that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). As discussed *supra,* a "district court justifiably may deny leave to amend on grounds such as undue delay, bad faith, dilatory motive, and prejudice, as well as on the ground that an amendment would be futile." *Smith,* 139 F.3d at 190 (citations omitted). The only arguable basis in the instant case for denying leave and accepting the amended counterclaim is futility of amendment; an "amendment is futile if the [pleading], as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Id.* (citations omitted). In determining whether the proposed Amended and Restated Counterclaim is futile, the district court applies the same stan-

dard of legal sufficiency as under Fed. R.Civ.P. 12(b)(6). *See id.* (citations omitted).

The fourth and final question, therefore, is whether leave to amend now should be granted. There is some overlap between the third and fourth questions, as the issue in both is whether amendment is futile and the standard for determining futility is the same for both questions. However, in considering the fourth question, this court need not speculate—it has the proposed Amended and Restated Counterclaim before it and can determine whether the amendment actually has corrected the relevant defects and whether the new pleading therefore can withstand a Rule 12(b)(6) motion. This court concludes, upon review of the proposed amended pleading, that it cannot withstand such a motion, that it therefore is futile within the meaning of Rule 15(a), and that leave to file the amended pleading should be and is denied.

It is true that the Amended and Restated Counterclaim pleads a reformation cause of action, including the elements of fraud and mistake, with great particularity and over the course of 164 paragraphs. The Amended and Restated Counterclaim quotes at length from the correspondences and discussions among the parties, the EPA, and this court, to plead specific facts to show that the parties understood and intended that the Stipulation would settle the action, that the parties knew that Union Corp. so intended, that the failure of the language of the Stipulation to actually create a final settlement either was a mutual mistake of the parties or a unilateral mistake by Union Corp. of which the United States had actual knowledge.

However, there remains a legal defect that cannot be overcome. As discussed *supra,* this court already had the opportunity, on three different occasions, to review and consider all the statements and comments pled in the Amended and Restated Counterclaim and all the evidence underlying and supporting those allegations incorporated into the Amended and Restated Counterclaim. And on two of those occasions, this court rejected the argument that the Stipulation was a complete release and settlement of this action or that the United States knew that Union Corp. intended it to be a complete release

and settlement. The Amended and Restated Counterclaim alleges facts that, even if true, this court already has determined, as a matter of law over the long course of this litigation, cannot support the legal conclusion that the parties intended the Stipulation to settle this action or that the United States knew that Union Corp. intended the Stipulation to settle this action. These facts therefore cannot form the basis for reformation of the 1983 Stipulation.

Union Corp. seeks to relitigate this issue through the Amended and Restated Counterclaim, but, as a matter of law, it may not do so. Nothing has been presented to show that this court's earlier decision on the meaning and effect of the Stipulation was clearly erroneous or would work manifest injustice so as to warrant reconsideration of that decision. The law of the case doctrine is intended for this precise situation, to maintain consistency and avoid such endless reconsideration of legal matters during the course of a continuing lawsuit. *See PIRG,* 123 F.3d at 116. This court therefore continues to adhere to and apply that doctrine and once again declines, in its discretion, to reopen or revisit this legal issue previously decided in this litigation. *See Christianson,* 486 U.S. at 816–17, 108 S.Ct. 2166; *PIRG,* 123 F.3d at 116–17. As a matter of law, the 1983 Stipulation did not and cannot form a final settlement of the litigation between the United States and Union Corp.

Finally, it is worth noting that the 1983 Stipulation was not a Consent Decree and was not treated by this court as such at the time. Indeed, the parties explicitly rejected such a final judicial decree approach, opting instead for the flexibility of the Stipulation and placement of the case in administrative suspense. Given the clear rejection of a final judicial consent decree by the parties at that time, there can be no legal basis, and indeed no legal power, for this court to reform the agreement into a consent decree now. A reformation counterclaim that asks this court to do so must fail as a matter of law. This is an additional legal defect in the proposed Amended and Restated Counterclaim that renders it unable to correct the defects of the original and therefore futile, requiring denial

of leave to amend. The answer to the fourth, and final, question, therefore, is No.

### Conclusion

For the foregoing reasons, this court concludes that the amended pleading is not properly before this court and therefore is stricken. This court further concludes that no leave to amend and replead shall be granted.